## STATE ex rel. CITY OF ALBERT LEA v. COUNTY OF FREEBORN and Others.[1]

May 3, 1912.

Nos. 17,582—(17).

**Appropriation for bridge.**

Section 2, c. 378, Laws 1911, authorizes the city council of cities of the fourth class to require the county board to appropriate money from the county road and bridge fund for the building or improving of bridges on such city streets only as the county board may have designated as state roads or highways.

Upon information of the city of Albert Lea the district court for Freeborn county issued its alternative writ of mandamus, directing the county of Freeborn and the members of the county board to appropriate the sum of $2,000 from the county road and bridge fund for the building of a certain bridge, dam and retaining works, and to issue to the city of Albert Lea warrants of the county in the sum of $2,000 therefor, or to show cause why a peremptory writ should not issue. From an order, Kingsley, J., quashing the writ, relator appealed. Affirmed.

*John O. Peterson* and *Morgan & Meighen,* for appellant.

*Norman E. Peterson* and *George W. Peterson,* for respondents.

[1] Reported in 135 N. W. 975.

STABT, C. J.

On the relation of the city of Albert Lea an alternative writ of mandamus was issued by the district court of the county of Freeborn commanding. the board of county commissioners of the county to appropriate $2,000 from the county road and bridge fund for the building of a bridge, with dam and retaining works connected therewith, upon and forming a part of a public street in the city. The respondents appeared and demurred, and also moved to quash the writ, because it and the petition therefor did not state facts sufficient to constitute a cause of action. The demurrer and motion were sustained, and judgment entered, quashing the writ, from which the relator appealed.

It appears from the petition that the relator is a city of the fourth class, and that subsequent to April 20, 1911, the city council determined to build a bridge, with a dam and retaining works connected therewith, upon and forming a part of the street or public highway, extending across the outlet of Fountain lake, known as Bridge street, all within the corporate limits of the city; that a contract for the work had been duly let for $25,474; that the work is in course of construction, and that the contractor is entitled to $5,000 for part performance; that over $2,000 in taxes on property within the city limits was paid into the county road and bridge fund during the year 1910; and, further, that the respondents have refused to appropriate from the county road and bridge fund $2,000 for part payment on the contract, although duly petitioned therefor by the city council.

It clearly appears from the petition that the bridge therein designated, with the dam and retaining works connected therewith, is upon and a part of the street or public highway known as Bridge street, which is wholly within the corporate limits of the city; that is, the dam and retaining works are connected with the bridge, which is a part of the street. It does not appear from the petition that such street, or any part thereof, has ever been designated as a state road or highway by the county board or otherwise. The relator claims the right to have the appropriation made by virtue of Laws

1911, p. 527, c. 378, and the sole question here is whether this act confers such right. The statute, so far as here material, is this:

"An act relating to highways, streets and bridges, wholly or partly within cities of the fourth class, providing for the expenditure of county road and bridge funds thereon, authorizing the designation thereof as state roads or state highways, and providing for state aid in certain instances.

"Be it enacted by the legislature of the state of Minnesota:

"**Designation of State Road.**—Section 1. Any road or highway or portion thereof, in any county, either wholly or partly within the corporate limits of any city of the fourth class, whether ordinarily designated as a street or otherwise, together with any bridge or bridges upon or forming part thereof, may be designated by the county board as a 'state road' or a 'state highway,' and may be built or improved either wholly or in part by the county, and state aid may be claimed and granted therefor the same as if outside such corporate limits.

"**Appropriation for Bridges.**—Sec. 2. Whenever the city council of any city of the fourth class shall determine that it is necessary to build or improve any bridge or bridges including approaches thereto and any dam or retaining works connected therewith, upon or forming part of streets or highways either wholly or partly within its limits, the county board shall appropriate such money as may be necessary therefor from the county road and bridge fund, not exceeding during any year the amount of taxes paid into the county road and bridge fund during the preceding year, on property within the corporate limits of said city. Such appropriation shall be made upon the petition of the city council. The city council shall determine the plans and specifications, shall let all necessary contracts, shall have charge of construction, and upon its request warrants in payment thereof shall be issued by the chairman of the board and county auditor from time to time as the construction work proceeds. Any unpaid balance may be paid or advanced by the city. On petition of the city council the appropriations of the county board during

successive years may be made to apply on the construction of the same items and to repay any money advanced by the city in the construction thereof."

The relator's claim is based upon section 2, which must be construed with reference to the title to the act and section 1 thereof. The contention of the relator, briefly stated, is to the effect that the purpose of the act is to aid highways, streets, and bridges within cities of the fourth class, and that it contains two distinct sources of such aid. One source, as provided by section 1, is that highways in such cities may be designated by the county board as state roads or highways, so as to be placed in that regard on the same basis as highways outside of municipalities, and state aid claimed therefor. The other source of such aid, as provided by section 2, is that the city council by its act alone may require certain moneys, not exceeding in any year the amount of taxes paid into the county road and bridge fund the previous year, to be appropriated from such county fund to be expended on bridges and connected works which are a part of any street or highway, wholly or partly within the city, although never designated as a state road or highway by the county board.

If this construction of section 2 of the statute be accepted, there would be serious difficulty in sustaining the act against the objections that the subject of section 2 is not expressed in the title and that the basis of classification adopted is not a permissible one. We must, if it can be reasonably done, give such construction to the act as will render all of its provisions valid and give effect to all of them. It is evident that "state roads" or "state highways," as used in the title and in section 1 of the act, are highways, whether ordinarily designated as streets or not, which may be so designated by the county board for the purpose of classification and state aid to them. R. L. Supp. 1909, § 1257–9. Section 1 of the act is germane to the title, and confers upon the county board in its discretion the right to designate any public highway or street wholly or partially within the city limits as such state road or highway, so as to entitle it to state aid under the statute governing the improvement of state highways.

Laws 1905, p. 198, c. 163 [R. L. Supp. 1909, §§ 1257—1 to 1257—12].

It would be contrary to the obvious spirit and intent of the statute for the board to designate a city street or highway, which was of local utility only; for it would be a misnomer to designate any city street as a state highway, unless it was so located or connected with the highways of the county as to be of general public utility. It is obvious that, if section 2 of the act in question was not intended to secure county aid in the building or improving of bridges, including approaches and any dam or retaining works connected therewith, on such streets only as the county board might designate as a state highway, then the city council of any city of the fourth class has the arbitrary power to compel the county board to appropriate from the county road and bridge fund money for the building or improving of any bridge on any street of the city, however limited and local its public use might be. There would be neither justice nor sense in a statute which compelled the county board to expend county money on a bridge in such a street. A construction of the act which would lead to such a result would be contrary to the manifest intention of the legislature as expressed in the title of the statute.

We accordingly hold that Laws 1911, c. 378, p. 528, § 2, authorizes the city council of cities of the fourth class to require the county board to appropriate money from the county road and bridge fund for the building or improving of bridges on such city streets only as the county board may have designated as state roads or highways.

Judgment affirmed.